UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MELANIE GIDDENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-312-PPS-SJF |
| | ) | |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Melanie Giddens has appealed from an administrative law judge's denial of her application for disability and disability insurance benefits. She has a trio of claims: (1) the ALJ erred in assessing the medical opinions; (2) the ALJ improperly rejected the severity of her symptoms; and (3) her residual functional capacity failed to account for all of her limitations. After a thorough review of the record, and given the deferential standard that applies to this appeal, I am convinced that the ALJ properly considered and analyzed the medical opinions and Giddens' subjective symptoms, as well as created an appropriate RFC. The ALJ's decision is supported by substantial evidence and therefore it will be affirmed.

### Background

Melanie Giddens applied for supplemental security income benefits and also protectively filed an application for supplemental security income on June 20, 2022, claiming that she was disabled as of December 13, 2021 due to a number of medical

conditions. [A.R.[1] 244-56, 306.]  Her claims were denied initially and again upon reconsideration.  After a subsequent hearing, an ALJ denied the claim. [A.R. 10-22.] Giddens now seeks review of that decision.

In the written decision, the ALJ determined that Giddens has the severe impairments of degenerative disc disease of the lower thoracic and lumbar spine; frozen left shoulder syndrome/left shoulder adhesive capsulitis; diabetes mellitus with neuropathy; foot drop/tarsal tunnel syndrome in the right foot; migraine headaches; mild to moderate obesity with associated hyperlipidemia and hypertension. [A.R. 13.] The ALJ then determined that Giddens did not meet any of the applicable social security listings for disability. [A.R. 13-14.]

When considering Giddens' residual functional capacity (RFC), the ALJ determined that she is capable of performing  light work as defined in 20 CFR § 404.1567(b) and 416.967(b) with the following additional lengthy and specific limitations: she can only stand/walk in combination, for only 4/8 hours in the eight hour workday; only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; she can never climb ladders, ropes, or scaffolds; she cannot overhead reach with the nondominant left upper extremity; she needs to avoid concentrated exposure to wetness, loud noise, bright/flashing lights, and hazards, including operational control of dangerous moving machinery, work at unprotected heights, and work around slippery/uneven/moving surfaces. [A.R. 15.]

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry No. 8.  Citations are to the page number in the lower right-hand corner of the A.R.

At the administrative hearing, the ALJ presented the RFC to a vocational expert (VE) and then asked the VE some hypothetical questions.  In summary, the VE opined that a hypothetical person with Giddens' RFC could likely find gainful employment. [A.R. 87-89.]  The ALJ determined that Giddens is capable of doing occupations such as cashier II, office helper, and inspector hand packager. [A.R. 21, 87-88.] As a result, the ALJ found that Giddens was not disabled within the meaning of the Social Security Act and its regulations.

## Discussion

I have a limited role as a district judge in Social Security disability appeals.  I do not review evidence and determine whether a claimant is disabled and entitled to benefits.  Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).  If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. § 405(g).

Although the term "substantial evidence" sounds like a high bar, it really isn't. It is actually even less than a preponderance of the evidence standard.  So held the Supreme Court more than fifty years ago.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). But "substantial evidence" does mean more than a "scintilla" of evidence. *Id.*  Put another way, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103

(2019). At bottom, my review of the ALJ's decision is guided by the following principle articulated by the Seventh Circuit: "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Given this modest standard, the review is a light one.  Indeed, "social-security adjudicators are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted).  But of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  With those standards in mind, let's turn to the three main issues in this case, and address each in turn.

## I.    Assessment of Medical Opinions

Giddens questions the ALJ's evaluation of the medical opinions that cover her physical limitations. [DE 13 at 9-15; DE 16 at 5-8.]  But I see no error since the ALJ considered the medical evidence in the record and specifically analyzed the opinions of the state agency consultants, a consultative medical examiner (Dr. Parker), and an opinion from Dr. Posner (a pain specialist). [A.R. 19.]

### A.    Medical Consultants' Findings

The ALJ relied on two state agency medical consultants' findings (one report is from August 2022 and the other dated December 2022), that Giddens could occasionally

lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk for a total of 4 hours, sit for a total of about 6 hours, could never climb ladders ropes or scaffolds, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and needed to avoid wetness and hazards. [A.R. 19; 92-101, 102-117, 118-29.]  Those consultants also noted limitations in reaching and handling with the left upper extremities.  *Id.*  Except for the reaching limitations, the ALJ found "these prior administrative findings are persuasive, as they are consistent with the overall evidence of record including treatment notes documenting overall improvement in the claimant's symptoms with medical treatment and medical examination findings noting a normal gait and no use of an assistive device (Hearing Testimony, Exhibits 4F; 7F; 11F-14F)." [A.R. 19.]

Regarding the consultative medical examiner (Dr. Stephen Parker), the ALJ noted that he opined that Giddens "could stand/walk for at least 2 hours in an 8-hour day and use the unoccupied upper extremity for lifting/carrying less than 10 pounds frequently and over 10 pounds occasionally (Exhibit 11F/10)."  *Id.*  While the ALJ thought this opinion did not indicate the most Giddens could do, he did find it generally persuasive because it was consistent with the overall evidence including exam findings, imaging, and the claimant's self-report that her back pain had improved and she was able to ambulate without the need for an assistive device.  *Id.* (citing Hearing Testimony, Exs. 11F-14F).  Additionally, the ALJ noted Dr. Parker's opinion was supported by the examiner's detailed examination notes.  *Id.* (Citing Ex. 11F).

Finally, the ALJ considered the July 2023 opinion of Dr. Rebecca Posner, a pain

specialist, who opined that Giddens could not stand more than 1 hour, needed to be allowed to sit, rest, or lean to alleviate back and hip pain, and needed to be allowed flexibility in footwear depending on the sensitivity in her foot that particular day. [A.R. 19.]  While the ALJ found her recommendation of avoidance of heavy machinery persuasive, he found the remainder of the opinion was not persuasive because it was "not consistent with, or supported by, the overall evidence." *Id.*  The ALJ specified that Dr. Posner's opinion was made before the insertion of a spinal cord stimulator that was noted to be 75% effective in treating the claimant's symptoms. *Id.* (citing Hearing Testimony; Ex. 12F).  Further, the opinion appeared to be based on Giddens' subjective reports and not objective findings which showed a normal gait, no motor weakness and normal coordination.  *Id.* (citing Ex. 12F/74).  Finally, the ALJ thought the opinion was for a limited duration based on notes indicating "she says she needs an end date for the restrictions that corresponds to her next office visit." [*Id.* at 19-20 (citing Ex. 12F/75).]

Giddens argues that the state agency opinions (dated August and December 2022) were outdated by the time of the ALJ's March 2024 decision. [DE 13 at 10-15.]  It is true that, as a general matter, the RFC should not be based on outdated medical opinions. "[A]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)).  But, as the Commissioner points out, state-agency medical consultants' opinions will always be outdated to some

extent. [DE 15 at 4.]  During this process, the medical consultants review a claimant's records and provide opinions at the initial and reconsideration stages of review.  *Id.*  It is only after the initial and reconsideration decisions have been made that a claimant can seek review by an ALJ.  *Id.* And at a hearing, the ALJ is called upon to consider those somewhat outdated opinions.  *See* 20 C.F.R. § 416.913(a)(5) (ALJs "must consider" "prior administrative medical findings and medical evidence from our Federal or State agency medical and psychological consultants").

Giddens cites evidence that is in the medical record, but dated later than the state agency opinions.  She claims this undermines the consultants' suggestion that Giddens could stand and/or walk for at least two hours based on a stable gait. [DE 13 at 10-11.] But the ALJ was entirely cognizant of this "newer" evidence that post-dated the state agency medical consultants and consultative medical examiner.  Indeed, the ALJ addressed much of it in his written opinion.

For example, some of the later evidence comes from an evaluation on May 9, 2023 [A.R. 1004]. That evaluation concluded that Giddens has allodynia, right lower inner leg, pain of right lower extremity, and it feels like she has blisters on her left foot when she wears shoes or has a blanket over it, and "spinal stenosis of lumbar region with nerogenic claudication." *Id.*  But this same report by Dr. Posner also indicates Giddens' back "is 'much improved' after fusion but continues to have right hip/knee/shin/ankle pain." *Id.*  This was plainly considered by the ALJ because this exact report was cited by him in his decision where he noted that Giddens "continued

-7-

to report low back and hip pain and had a spinal cord stimulator trial in August 2023

followed by insertion in September 2023." [A.R. 17 citing Exs. 12F/35, 14F/23.]

The ALJ also pointed out that notes in September 2023 indicate that lumbar

spinal stenosis, spondylosis and radiculopathy "had resolved." *Id.* What's more, the

ALJ noted that in a October 27, 2023 follow-up, Giddens reported the pain was a 2/10 at

the time, and 5/10 at its worst. *Id.* Giddens also told Dr. Posner who completed the

pain management report (as well as stated during the ALJ hearing) that the spinal cord

stimulator was 75% effective and Lyrica was effective for nerve pain. *Id.* And the ALJ

included in his report Giddens' comments at the follow-up that she has been able to get

a decent night's sleep since the insertion of the stimulator, and had lost 40 pounds. *Id.*

This pain consult follow-up occurred in October 2023, about a year after the state

agency opinions. Consequently this situation is very different from *Moreno*, "which

involved a seven-year-old assessment undermined by later records of entirely new

symptoms." *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (citing *Moreno*, 882 F.3d at

728). In *Pavlicek*, the Seventh Circuit later clarified the reach of *Moreno* by holding that a

two-year old medical opinion "was not so outdated that the ALJ had to disregard it"

especially since the opining doctor in *Pavlicek* already knew the claimant was

experiencing some symptoms so later records corroborating the condition did not

necessarily undermine his conclusions. *Id.* at 784. In this case, the state consultants

knew at the time that Giddens was having pain in her back and some degree of

difficulty walking and standing, so this also isn't a situation where later medical

evidence revealed an entirely new diagnosis or entirely new symptoms many years later.

Additional evidence Giddens cites as postdating the agency opinions and making them not trustworthy is another pain consult follow-up with Dr. Posner on June 22, 2023, where Giddens complained of ankle sensitivity and not being able to stand more than an hour. [A.R. 996.] But again, this same report that is cited by the ALJ in his opinion also notes that Giddens was working part time at a gas station for up to 6 hours, and she "[d]oes not feel like she is walking on blisters anymore on the right foot." [A.R. 18 citing Ex. 12F/78-79.] At this juncture in the ALJ opinion, the ALJ also cited Gidden's hearing testimony establishing she could drive, cook, shop (with a shopping cart), do laundry, take care of a dog and bird, and put her shoes on (with adjustments). [A.R. 18.]

Being able to rely on Dr. Posner's write ups from the pain consults in 2023 and Giddens' own testimony during the hearing gives the ALJ a tether to consider the evidence post-dating the state consultative exams. While of course the ALJ cannot "play doctor" by essentially making his own judgments regarding information in the medical record, *see McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018), that's not what the ALJ did in this case. Instead, the ALJ considered the evidence in the record that postdated the state medical opinions, relying in part on Dr. Posner's pain management follow-ups and Giddens' own testimony during the administrative hearing. This seems entirely appropriate, especially since the gap in time between the state agency opinions

and this other material was not that long and the "new" information and symptoms are all related to Giddens' sensory issues, ability to stand, and back pain rather than entirely new symptoms or problems. Therefore, the medical evidence postdating the state agency opinions does not justify a remand. *See Stumo v. Kijakazi*, No. 21-cv-097-wmc, 2022 WL 4481470, at *2 (W.D .Wis. Sept. 27 2022) (denying remand where plaintiff argued the ALJ should have solicited a medical opinion about her capabilities after spinal fusion surgery).

Giddens also claims the ALJ falsely relied upon the state agency consultants' opinions because the ALJ wrongly concluded the new evidence showed improvement with treatment. [DE 13 at 11; DE 16 at 6; A.R. 19.] However, as shown above, there *are* indicators in the record showing improvement in some areas. And this is not a case where the ALJ can be accused of cherry-picking evidence. Instead, he gave a fair accounting of Giddens condition—both pro and con. *See, e.g.*, A.R. 17 ("claimant reported improvement after the surgery but continued to report right sided back pain, sensitivity to touch in her right leg and tingling in her right foot") (citing Ex. 9F/136); A.R. 17 ("Notes suggest improvement when the claimant no longer had to help lift her mother with the claimant reporting 1/10 pain in late August 2022.") (citing Exs. 8F/8; 9F/125); A.R. 18 ("A1c was noted to be much improved by June 2023" though exam notes in November 2023 "indicate reduced sensation in her bilateral feet") (citing Ex. 12F/81; 13F3).

As the Seventh Circuit found in *Bakke v. Kijakazi*, 62 F.4th 1061, 1070 (7th Cir.

2023), "[w]ith these repeated acknowledgments of [claimant's] improvements and setbacks, this is not a case of cherry-picking evidence…. Where the ALJ clearly notes all evidence—that which supports his conclusion and that which undermines it—we cannot replace his judgment with ours."  The same applies here where the ALJ provided a balanced view of Giddens' condition.  In sum, the ALJ's reliance on the state agency medical consultants does not present a grounds for reversal or remand.

### B.    Dr. Posner's Opinions

Relatedly, Giddens also believes the ALJ improperly weighed the opinion of Dr. Posner (the pain management specialist). [DE 13 at 12-15.]  Recall that Dr. Posner opined in July 2023 that Giddens could not stand more than 1 hour, needed to sit, rest, or lean to alleviate back and hip pain and needed to avoid heavy machinery. [A.R. 19.]  While the ALJ adopted the heavy machinery restriction, he found the rest of Dr. Posner's opinion "not persuasive" because it was not consistent with or supported by the overall evidence.  *Id.*  If the ALJ had stopped his analysis after this statement, I might agree that he did not create a logical bridge between the evidence and his conclusions.  *See, e.g., Bakke*, 62 F.4th at 1067 n.2.  However, the ALJ's opinion goes on to explain *why* the ALJ discounted Dr. Posner's opinion.

First, the ALJ noted the opinion was given before the insertion of the spinal cord stimulator which Giddens herself admitted during the administrative hearing that it was about 75% effective. [A.R. 72; 19.]  When specifically asked about her level of pain during the hearing or what aggravates it, Giddens answered that she "still ha[s] some,

-11-

like, neuropathy in the right leg, some tingling in the right foot." [A.R. 73.]  If she is

mopping the floor, she gets pain on the right side where they put the nerve stimulator

and she still has a lot of pain in the mid-back.  *Id.*  But her testimony reveals a somewhat

modest level of pain, as opposed to something extremely severe.

The ALJ's discounting of Dr. Posner's opinion was also due to the ALJ's finding

that "the opinion appeared to be based on the claimant's subjective reports and not

objective findings which showed a normal gait, no motor weakness and normal

coordination (Ex. 12F/74)." [A.R. 19.]  This is entirely appropriate for an ALJ to

minimize an opinion that appears to be premised on a claimant's subjective statements.

*See Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. Sept. 1, 2016) (an ALJ can discount an

opinion "based on subjective reports . . . rather than objective measurements") (citations

omitted); *Givens v. Colvin*, 551 F. App'x 855, 861 (7th Cir. Dec. 17, 2013) ("An ALJ may

give less weight to an opinion that appears to rely heavily on the claimant's subjective

complaints, even if the source of that opinion had examined the claimant.") (citations

omitted).

Giddens also contends "[t]he ALJ was not permitted to determine that, in his lay

opinion, Dr. Posner's *abnormal* findings did not support her opinions simply because

Plaintiff's *gait and strength* improved while her symptoms of pain, sensitivity,

numbness, and falls did not." [DE 13 at 14 (emphasis in original).]  This is *exactly* what

the ALJ is supposed to do—they weigh evidence.  I don't see why the ALJ can't look at

both the evidence of normal findings as well as abnormal ones, to reach his ultimate

conclusion. *Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *4 (7th Cir. Aug. 19, 2021) ("Weighing conflicting evidence is exactly what the ALJ was required to do in assessing Weber's disability claim" and conclusion that he "was not as limited as he alleged…. is not an improper medical determination but 'is the type of context consideration that judges routinely make when assessing the weight to attribute to conflicting evidence.") (quoting *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004)). If an ALJ cannot weigh medical findings against each other, there would be little point to ALJ review and the agency would automatically defer to doctor's opinions. But that is not how it is done. It is the ALJ, not any one doctor, who determines a claimant's functional capacity. 20 C.F.R. § 416.9469(c) ("the administrative law judge… is responsible for assessing your residual functional capacity."); 20 C.F.R. § 404.1546(c) (same).

Finally, the ALJ noted that it "appear[ed] the opinion was for a limited duration" based on notes indicating, "[s]he says she needs an end date for the restrictions that corresponds to her next office visit. (Ex. 12F/75)." [A.R. 20.] And I'll note that in the same office note visits, Dr. Posner recorded that Giddens "is waiting to hear if she is approved for disability and has a lawyer. She has filed for disability and has been denied twice and is waiting on an appeal." [A.R. 992.] Giddens claims the ALJ has ignored the important context of continuing symptoms simply because Dr. Posner added a time limitation after Giddens requested one for her paperwork. [DE 13 at 13-14.] However, this isn't really accurate because Dr. Posner also noted the restrictions were ongoing. [A.R. 992, 996.] Nevertheless, the ALJ was entitled to take into account

the fact that the opinion seemed to be temporary in nature, and the ALJ explained why he drew this conclusion (due to a statement from Giddens herself).  *See Dzafic v. Kijakazi*, No. 22-2090, 2023 WL 2536340, at \*5 (7th Cir. Mar. 16, 2023) (finding substantial evidence where the ALJ "further opined that these notices seemed to describe only temporary restrictions").

Substantial reasoning supports the ALJ's evaluation of all of the medical opinions in this case.  The ALJ articulated his thoughts surrounding his analysis and cited to both medical evidence in the record and Giddens' own testimony to support it. At base, it seems like Giddens is asking me to just re-weigh this evidence, which I cannot do.  *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021); *L.D.R. by Wagner v. Berryhill*, 920 F.2d 1146, 1152 (7th Cir. 2019); *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016).

II.      **Subjective Symptom Analysis**

The next question to address is whether the ALJ failed to properly analyze Giddens' subjective symptoms.  Giddens claims the ALJ erred in rejecting the severity of her symptoms. [DE 13 at 15.]

When evaluating a claimant's subjective symptoms, the correct standard is whether the subjective symptoms are reasonably consistent with the objective medical evidence. 20 C.F.R § 404.1529(c)(3).  According to the regulations, "any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . ." 20 C.F.R. § 404.1529(c)(3).  Additionally, "[y]our symptoms, including pain, will be determined to

-14-

diminish your capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).  This is important to note "[b]ecause symptoms, such as pain, are subjective and difficult to quantify . . . ." 20 C.F.R. § 404.1529(c)(3).

When an ALJ dismisses a claimant's subjective symptoms, he must follow up with an explanation for the rejection. *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011). This means an ALJ must explain his evaluation of subjective symptoms in such a way so as to allow the Court to meaningfully determine whether the conclusion is logically and rationally based on evidence in the record. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005).  But an "ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562; 20 C.F.R. § 404.1529(c)(2).

None of this means that an ALJ has to "discuss every detail in the record as it relates to every factor," but of course "an ALJ may not ignore an entire line of evidence contrary to [their] ruling."  *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).  "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong."  *Id.* at 1279; *see also Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (a subjective symptom evaluation is "patently wrong" only if it "lacks any explanation or support."); *Bakke*, 62 F.4th at 1068 (if substantial evidence supports the ALJ's decision, it must be affirmed "even where reasonable minds might disagree about the outcome.").

In evaluating Giddens' subjective symptoms, the ALJ summarized her testimony as follows:

> The claimant alleges disability due primarily to spine issues, a locked left shoulder, diabetes, migraines and high cholesterol and blood pressure. At the hearing, the claimant reported that her most significant problem is her lower back. She said that insertion of a spinal cord stimulator was about 75% effective and she no longer has spasms, but she still has neuropathy in her right leg, tingling in the right foot, and dropping of the foot. She also reported pain in her mid-back and said she cannot walk on her heels. In addition to her spine issues, the claimant reported pain in her left shoulder 'every now and then' and some limitation in her ability to lift her arm overhead. She reported migraines but said she does not get them as often since she started taking migraine medicine. She said she now has migraines about two times every couple of months and has to go to a dark place when she gets one.
>
> Due to her impairments, the claimant testified that she has functional limitations. Namely, she can walk only about a block-and-a-half before needing to sit down, she needs to lean against something with her stomach when she stands, and she cannot sit in an office chair. She said she can sit in a recliner for about 10% of the day, lift/carry groceries into the house, and grab and hold onto objects okay, but has some difficulty bending and she has to hold onto a railing to climb stairs. The claimant said she cannot work 40 hours per week at her current job because of the standing and she would be required to stock shelves, which she said she cannot do. (Hearing Testimony) . . .
>
> While the evidence supports the functional limitations in the residual functional capacity, the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. She asserts she is unable to work due to her impairments, but evidence shows she is able to drive, work part time as a cashier, cook, shop (with a shopping cart), do laundry, take care of a dog and bird, and put her shoes on (with adjustments). (Hearing Testimony; Ex. 12F/78). The claimant confirmed that she

> does not use an assistive device. (Hearing Testimony).
> Taken as a whole, the record does not demonstrative that the
> limitations resulting from the claimant's impairments are
> totally work preclusive or greater than those provided in the
> above residual functional capacity assessment.

[A.R. 16, 18-19.]

I have reviewed Giddens' hearing testimony at length, and I think the ALJ

accurately and fairly summarized it.  In her memorandum, Giddens dives into the

medical record again.  She cites Dr. Austin from the same pain management group, the

updated MRI from February 2023 and a finding of radiculopathy that was consistent

with failed back syndrome.  She then argues the ALJ improperly relied on normal

imaging and testing to find Giddens' reported symptoms due to radiculopathy and

failed back syndrome inconsistent with the medical record. [DE 13 at 15-16; Tr. 975,

1004.]  But, again, the ALJ is entitled to rely on Giddens' own testimony, as well as

imaging, normal exam results, and improvement when evaluating subjective

symptoms.  *See Desotelle v. Kijakazi*, No. 22-1602, 2023 WL 4146246, at *2 (7th Cir. June

23, 2023) (affirming where ALJ discounted opinion because, inter alia, claimant

"demonstrated reasonably good functioning during physical examinations -  including

a normal gait and strength, and intact balance and coordination"); *Bakke*, 62 F.4th at

1069 (affirming where ALJ's analysis of serious back pain included consideration of

"documents reflecting normal gait, strength, reflexes, and range of motion"); *Prill v.*

*Kijakazi*, 23 F.4th 738, 750 (7th Cir. 2022) (affirming where ALJ relied on examination

results "of 'normal tone without atrophy in all muscle groups of the upper and lower

extremities' and that Prill 'had normal heel and toe and tandem gait'"); *Massaglia v.*

-17-

*Saul*, 805 F. App'x 406, 410 (7th Cir. March 4, 2020) (affirming where "ALJ thoroughly discussed the record and supported his conclusion with (at least) the following evidence . . . her condition improved with physical therapy and pain management in 2014 and 2015 . . . after her 2016 reinjury and surgery, she reported a 90 percent improvement in her pain"); *Olsen v. Colvin*, 551 F. App'x 868, 875 (7th Cir. 2014) (finding no error where "the ALJ summarized the results of each MRI and drew a conclusion from those diagnostic tests that Olsen's abnormalities mostly were mild") (emphasis added); *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2014), as amended (Aug. 20, 2014) (noting that, while improvement "does not necessarily" mean someone is not disabled, it is nonetheless an "important" factor to consider); *see also* Social Security Ruling 16-03p, 2016 WL 1119029, at *6 (March 16, 2016) ("Important information about symptoms… may include, but is not limited to… change over a period of time (e.g., whether worsening, improving, or static)…").

In sum, the ALJ's evaluation of Giddens' symptoms was adequately supported with evidence and explanation.  In arguing that the ALJ's analysis of her subjective symptoms requires a remand, Plaintiff's stance amounts to nothing more than a request for a remand that orders a re-weighing of the various factors. *See, e.g., Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) ("Jones must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility determination was patently wrong.").  But, as I articulated at the beginning of this order, that is not my job.  The ALJ was entitled to weigh the medical evidence in the record and the opinions of the state agency consultants and consultative medical

examiner in determining whether Giddens' subjective complaints were supported by the medical evidence, and if not, discount the degree and severity of the alleged symptoms. *See* 20 C.F.R. § 404.1529(c)(4). The ALJ provided adequate support and reasoning behind the conclusions he reached, and while reasonable minds could differ as to the outcome, I certainly cannot say that the ALJ's credibility determination was "patently wrong." *Grotts,* 27 F.4th at 1279.

### III.    The RFC and Lack of Persistence Restrictions

The final issue raised by Giddens is whether the ALJ sufficiently accounted for her obesity in his RFC findings. [DE 13 at 20-21.] The ALJ noted in his opinion that Giddens' obesity is a severe impairment, as she weighed 249-277 pounds, with a height of 5 feet 9 inches, which calculates a body mass index (BMI) of 36.77-40.91. [A.R. 18 (citing Exs. 7F/5; 12F/3).] Regarding Giddens' obesity, the ALJ found that "including the effect on exertional functions, nonexertional functions, stress on weight-bearing joints, limitations of range of motion, ability to manipulate objects, ability to tolerate environmental conditions and physical and mental ability to sustain function over time, ha[ve] been considered alone and in combination with the other impairments." [A.R. 18.] While Giddens might have preferred more elaboration as to specifically how the ALJ considered obesity in combination with her other conditions, I don't think this level of specificity is necessary in the written opinion.

Moreover, without any evidence to support the claim that her obesity limited her ability to work, Giddens' naked assertion that the ALJ did not sufficiently analyze her weight goes nowhere. The Seventh Circuit dealt with a similar claim in *Prochaska v.*

-19-

*Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006), where the claimant argued the ALJ ignored the effect of her documented obesity, which in tandem with her diagnosed back impairment, created a disability. Nevertheless, the Seventh Circuit found that"[n]o medical opinion in the record identified [claimant's] obesity as significantly aggravating her back injury or contributing to her physical limitations." *Id.* at 737. We're on even sturdier ground than in *Prochaska* because, again, the ALJ went a step further here and *did* address her obesity.

Additionally, the claimant in *Prochaska* failed "to point to any other evidence suggesting that her obesity exacerbated her physical impairments." Therefore, the Seventh Circuit found if there was any error on the part of the ALJ, it was harmless. *Id. See also Shumaker v Colvin*, 632 F. App'x 861, 867-68 (7th Cir. 2015) (noting when a claimant "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ, and neither does she explain how her obesity exacerbated her underlying impairments . . . even if the ALJ had erred in considering how [claimant's] obesity affects her ability to work, that error would be harmless."). The same situation is present here. Giddens has not presented any evidence—whether it be medical opinions or her own testimony—suggesting that her obesity limited her ability to work in any way. Therefore, even if the ALJ should have considered her obesity more, or given more of an explanation as to why he discounted it, any such error would be harmless.

Plaintiff also argues that the ALJ failed to address her symptoms and functionality from her alleged onset date of Dec. 31, 2021, though the date of her spinal

-20-

surgery in August 2022. [DE 13 at. 21.] That is simply not correct. *See, e.g.,* A.R. 16 (addressing "treatment in the first half of 2022"); A.R. 17 (discussing x-ray and orthopedic visit in June 2022); A.R. 17 (discussing records of diabetes in February 2022); *see also* A.R. 21 (finding that plaintiff had not met the standard for disability "from December 13, 2021, through the date of this decision") (emphasis added).  While Giddens may have wanted the ALJ to say more, as already noted, his articulation requirement was minimal.

Giddens further faults the ALJ for not including restrictions on her ability to "persist." [DE 13 at 22-24.]  But the ALJ only has to address restrictions that he found were supported by the record.  *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) ("Crucially, [] an ALJ need only include limitations that are supported by the medical record."); *Schmidt v. Astrue*, 496 F.3d 833, 845-846 (7th Cir. Aug. 8, 2007) ("the ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible") (citing *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. Aug. 3, 1992)).  And, as already noted, the ALJ does not have to address everything that Plaintiff may have wanted him to.  *Warnell*, 97 F.4th at 1053; *Bakke*, 62 F.4th at 1066; *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

Here, Giddens wanted the ALJ to explicitly address depression and chronic pain disorder and their putative effects on concentration and persistence. [DE 13 at 23-24.] Giddens cites her testimony at the hearing, and one medical record, in support of her alleged inability to persist or concentrate. [*Id.* at 24; A.R. 81-82, 83, 996.] That testimony, and record, however, contains no allegation from Giddens that she has trouble

persisting or concentrating. To be sure, they reflect her alleged physical capabilities, but the ALJ addressed those head on. In short, the records cited do not in the least support the assertion that Giddens does not have the capacity to persist or concentrate. *See, e.g.*, A.R. 335 (plaintiff's self-completed function report declining to indicate any issues with "Concentration" or "Completing Tasks").

In sum, the ALJ's formulation of Giddens' RFC— whether it be related to his handling of her obesity or his failure to consider how her condition effected her ability to concentrate and persist— is not grounds for remand.

### Conclusion

For the reasons set forth above, the final decision of the Commissioner of Social Security denying Plaintiff Melanie Giddens' application for supplemental security income benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

ENTERED: July 28, 2026.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT